# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| | | |
|---|---|---|
| **JON D. OZMENT** | * | **CIVIL ACTION NO. 07-1453** |
| **VERSUS** | * | |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

## MEMORANDUM RULING

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. Pursuant to 28 U.S.C. § 636(c)(1) and with the consent of all parties, the district court referred the above-captioned matter to the undersigned magistrate judge for the administration of proceedings and entry of judgment. For reasons assigned below, the decision of the Commissioner is **AFFIRMED**, and this matter **DISMISSED** with prejudice.

## Background & Procedural History

Jon D. Ozment filed the instant application for Disability Insurance Benefits on January 27, 2005. (Tr. 70-72). He alleged disability since August 25, 1994, due to spinal stenosis, osteoarthritis, degenerative disc disease, and pain. (Tr. 70, 78-79).[1] The claim was denied at the initial stage of the administrative process. (Tr. 46, 49-52). Thereafter, Ozment requested and received a February 7, 2006, hearing before an Administrative Law Judge ("ALJ"). (Tr. 232-249). However, in a November 6, 2006, written decision, the ALJ determined that Ozment was not

---

[1] The ALJ noted that plaintiffs worked at the substantially gainful level in 1997 and 1999. (Tr. 29).

disabled under the Social Security Act, finding at Step Five of the sequential evaluation process that he was able to make an adjustment to other work that exists in substantial numbers in the national economy. (Tr. 24-35). Ozment appealed the adverse decision to the Appeals Council. Nonetheless, on August 3, 2007, the Appeals Council denied Ozment's request for review, thus the ALJ's decision became the final decision of the Commissioner. (Tr. 6-8).

On August 31, 2007, Ozment sought review before this court. He alleges the following errors:

1) the ALJ failed to provide the medical consultant, Dr. Barnes, with medical records from 1994-1995; and

2) the ALJ inappropriately assigned undue weight to the opinion of Dr. Barnes, a non-examining physician.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no

2

substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

### **Determination of Disability**

Pursuant to the Social Security Act (the "Act"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the Act utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the Act. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**Analysis**

The ALJ determined at Step Two of the sequential evaluation process that prior to June 30, 2002, Ozment suffered from the severe impairment of herniated L4-5 disc with no significant spinal stenosis. (Tr. 31, 34). He found at Step Three that the impairments were not severe enough to meet or medically equal any of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. *Id*. The ALJ then determined that Ozment retained the residual functional capacity to perform the full range of light work. (Tr. 32,

4

35).[2]

At the outset, the court emphasizes that Ozment was insured for disability benefits only through June 30, 2002. (Tr. 28). "A claimant is eligible for benefits only if the onset of disability began on or before the date the claimant was last insured." *Ivy v. Sullivan,* 898 F.2d 1045, 1048 (5th Cir. 1990). The claimant bears the burden of establishing a disabling condition before the expiration of his insured status. *Id.* Social Security Ruling 83-20 outlines the policy and procedure by which the Commissioner should determine the onset date of a disability. SSR 83-20 (1983). "Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence." *Id*. With slowly progressive impairments, "it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." *Spellman v. Shalala*, 1 F.3d 357, 362 (5th Cir. 1997) (quoting, SSR 83-20). In such cases, "when the medical evidence regarding the onset date of a disability is ambiguous and the [Commissioner] must infer the onset date, SSR 83-20 requires that that inference be based on an informed judgment. The [Commissioner] cannot make such an inference without the assistance of a medical advisor." *Spellman*, 1 F.3d at 362 .

---

[2] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

To effect his inquiry, the ALJ submitted written interrogatories to Frank Barnes, M.D., an orthopedic surgeon. (Tr. 167-179). On April 11, 2006, Barnes opined that during the relevant period, Ozment did not meet or equal a listing, and that he retained a residual functional capacity for light work. *Id*. On May 27, June 19, and July 16, 2006, Barnes answered supplemental interrogatories submitted by Ozment's representative. (Tr. 180-188, 198-207, 209-224). In his supplemental responses, Barnes found that as of June 15, 2006, Ozment met Listing 1.04. (Tr. 212). However, prior to that date, and prior to June 20, 2002, Barnes indicated that Ozment did not have the requisite neurologic findings to meet or equal that listing. (Tr. 211).

Plaintiff contends that the ALJ erred in relying upon Dr. Barnes' opinion because 1) Barnes was not provided with records from 1994-1995 which document spinal stenosis and disc herniation; and 2) it conflicted with the opinions of Ozment's treating physicians. With respect to the former argument, the court observes that on June 18, 2006, plaintiff submitted the 1994-1995 records to the Commissioner. (Tr. 3, 188A-192). The ALJ subsequently forwarded new evidence for Dr. Barnes's consideration on July 6, 2006. (Tr. 209). It is not clear whether the new evidence included the 1994-1995 records. However, the apparent significance of the 1994-1995 records is that they document spinal stenosis and possible herniated nucleus pulposus. (Tr. 188A-192). In his response to the ALJ's supplemental interrogatories, Dr. Barnes found that plaintiff suffered from cervical and lumbar disc disease *and lumbar stenosis*. (Tr. 211) (emphasis added).[3] Despite the diagnosis of spinal stenosis, Barnes opined that during the relevant period, Ozment did not meet or equal a listing and that he retained the residual functional capacity for light work.

---

[3] Barnes's assessment tracks and references Dr. Acurio's June 15, 2006, evaluation. (*See*, Tr. 195-197, 212).

(Tr. 211-213; 221-224). Thus, even if Barnes did not review the 1994-1995 diagnostic records, any error was harmless as the substance of the test results were incorporated into his findings and assessment. *See, Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (discussing harmless error).[4]

Plaintiff next argues that Dr. Barnes's assessment must defer to the findings and opinions of plaintiff's treating physicians. Indeed, "an ALJ may properly rely on a non-examining physician's assessment when . . . those findings are based upon a careful evaluation of the medical evidence and *do not contradict those of the examining physician*." *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991)(quoting, *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990)) (emphasis added). Here, there are no irreconcilable conflicts between Barnes's findings and the opinions of plaintiff's treating physician(s).

Besides the 1994-1995 diagnostic test results discussed above, the instant record contains only one other medical treatment record during the relevant period: a July 14, 2000, spinal evaluation by orthopedist, Carl Goodman, M.D. (Tr. 152-153).[5] At that time, Goodman noted that Ozment complained of back and left hip pain, with occasional numbness in the right leg. *Id*. However, there was no weakness. *Id*. Ozment walked without a limp, stood on his heels and toes without difficulty, and exhibited no spasm or deformity. *Id*. Although his lumbar movements were limited due to low back pain, Ozment's hip motion was full, without pain, and his straight

---

[4] The 1995 CT scan also suggested spinal stenosis at the C3-4 level. (Tr. 190-191). However, this was a congenital condition, thus implying that Ozment had been able to work despite the alleged impairment. Even if Barnes had recognized cervical stenosis, plaintiff still did not meet a listing because he did not exhibit the requisite neurological abnormalities during the relevant period. (*See*, Tr. 211).
 To the extent that the ALJ failed to recognize spinal stenosis as a severe impairment, the error is harmless.

[5] An MRI is associated with the evaluation. (Tr. 151).

leg test was negative. *Id*. His motor strength was 5/5, with no sensory deficit. *Id*. Goodman diagnosed degenerative lumbar disc disease and documented the need to rule out disc herniation or spinal stenosis. *Id*.

On August 3, 2000, Goodman wrote that an MRI showed a disc bulge at L4-5, with bilateral bulging, but no free fragments or nerve root involvement, and no significant stenosis. (Tr. 150).[6] Goodman advised non-operative care. *Id*. He further noted that Ozment inquired about possible disability, to which Goodman advised him to apply, adding that he would author a letter. *Id*. Goodman advised Ozment to lose weight and to exercise. (Tr. 149).

The next medical record is dated September 7, 2004, – over two years after the date that plaintiff was last insured for disability insurance benefits. (Tr. 147). Dr. Goodman noted that Ozment had increased pain since the last time he saw him four years earlier. *Id*. He further indicated that plaintiff was unable work, but was not on disability. *Id*. Plaintiff reported that he could not walk any distance because of pain. *Id*. Examination revealed a mildly positive straight leg test on the right, but no definite weakness or sensory change. *Id*. Goodman diagnosed lumbar disc disease, with spinal stenosis. *Id*. After reviewing the MRI results, Goodman did not recommend surgery. (Tr. 144). Instead, he called in a prescription for darvocet and advised Ozment to continue taking glucosamine/chondroitin sulfate. *Id*.

In a March 9, 2005, To Whom it May Concern letter, Dr. Goodman stated that Ozment had been unable to work due to chronic pain and disability. (Tr. 163). He concluded that plaintiff needed to be on disability because of his neck and back problems. *Id*. Of course, statements that a claimant is "disabled" or "unable to work" are afforded no special significance under the

---

[6] *But see*, May 19, 2006, To Whom it May Concern letter. (Tr. 193)

regulations. 20 C.F.R. § 404.1527(e)(1); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003).

On June 6, 2005, Dr. Goodman completed a medical source statement indicating that plaintiff was unable to complete a full workday. (Tr. 164-165). However, the statement does not indicate that it addressed Ozment's limitations during the relevant period, *i.e.*, through June 30, 2002. Accordingly, it does not necessarily conflict with Dr. Barnes's assessment of plaintiff's impairments.

On May 10, 2006, Goodman wrote a To Whom it May Concern letter wherein he recited Ozment's treatment history and concluded that he has been unable to work. (Tr. 194). Goodman opined that Ozment's condition prevented him from being able to sit, stand, or walk for any length of time. *Id*. He noted, however, that the condition was progressive, and that it was leading to more pain and incapacitation. *Id*. Critically, Goodman's letter does not indicate that plaintiff's exertional limitations were present during the relevant period. Moreover, Goodman confirmed that plaintiff's impairments had progressively worsened over the years. Again, Goodman's opinion does not conflict with Dr. Barnes's assessment for the relevant period.[7]

On June 15, 2006, Michael Acurio, M.D., administered an initial evaluation of Ozment. (Tr. 195-197). He noted that plaintiff stated that he had always experienced back pain, but that it had further *progressed*. *Id*. (emphasis added). Plaintiff reported that he had only treated his condition with anti-inflammatory medications. *Id*. Plaintiff stated that his cervical pain started in 2000, but had become "further constant." *Id*. Acurio diagnosed cervical and lumbar disc disease

---

[7] On May 19, 2006, Dr. Goodman wrote yet another To Whom it May Concern letter. (Tr. 193). In this letter, Goodman compared MRI films from 2000 and 2004, and opined that Ozment's congenital spinal stenosis was present in both 2000 and 2004. *Id*. He acknowledged, however, that generalized spondylitic changes had worsened since 2000, especially at L2-L3. *Id*.

with lumbar stenosis. *Id*. He opined that stenosis was present in 2000. *Id*. Acurio believed that plaintiff could obtain symptomatic improvement with further treatment. *Id*.

On August 16, 2006, Dr. Acurio wrote a To Whom it May Concern letter wherein he noted that plaintiff suffered from stenosis in 2000. (Tr. 226). However, he stated that spinal stenosis is a progressive disease, with progressive limitations of function. *Id*. He concluded that Ozment was disabled. *Id*. Yet, statements that a claimant is "disabled" or "unable to work" are afforded no special significance under the regulations. 20 C.F.R. § 404.1527(e)(1); *Frank, supra*. Moreover, Acurio did not assess plaintiff's functional limitations during the relevant period. *Id*.

In an August 23, 2006, To Whom it May Concern letter, Dr. Acurio stated that individuals with spinal stenosis and lumbar disc disease experience limitations with the ability to sit, stand, and walk. (Tr. 227). Based upon Ozment's history, Acurio "suspected" that he experienced these problems prior to June 2002. *Id*. This statement does not necessarily contradict Dr. Barnes's assessment, because Barnes also found that plaintiff's condition imposed functional limitations during the relevant period.[8] The court further notes that Acurio cautioned that Ozment was not his patient during the relevant period. Thus, to the extent that Acurio's opinion conflicts with Dr. Barnes's assessment of plaintiff's limitations, the ALJ was not precluded from relying on the latter physician's evaluation, where both had reviewed plaintiff's condition for a period when they were not an examining or treating physician.[9]

---

[8] Even if plaintiff's residual functional capacity were reduced to sedentary work, with a sit/stand option, this would not materially affect the Commissioner's disability determination. (*See*, Tr. 247) (vocational expert testimony).

[9] The same rationale justifies the ALJ's implied decision to favor Dr. Barnes's assessment of plaintiff's limitations during the relevant period rather than Acurio's June 27, 2006, medical source statement which indicated *inter alia* an inability to complete a workday.

10

It is manifest that plaintiff suffered disc disease and spinal stenosis during the relevant period. Despite these impairments, the non-examining medical examiner, Dr. Barnes, opined that plaintiff did not meet or equal a listing and retained the residual functional capacity for light work. (*See*, Tr. 210-224). This assessment is supported by statements from the examining physicians, Goodman and Acurio, who confirmed that plaintiff's condition progressively worsened over time. *See*, discussion, *supra*. Moreover, despite his awareness of a possible disability claim in 2000, plaintiff did not actually file a claim until over four years later in January 2005.[10] During this four year period, there is no evidence that plaintiff sought medical treatment for his condition. Indeed, the record suggests that he only took anti-inflammatories. Plaintiff did not again seek medical treatment until over two years after his eligibility for benefits expired. While plaintiff certainly exhibited impairments during the relevant period that could have caused disabling limitations, there is substantial record evidence to support the ALJ's determination that plaintiff's condition did not become disabling until well after the date that he was last insured for benefits.

Under these circumstances, the court finds no error in the ALJ's decision to credit Dr. Barnes's assessment of plaintiff's condition during the relevant period. The ALJ's conclusion that plaintiff's impairments did not reach a disabling level during the relevant period is substantially supported by due consideration of plaintiff's allegations, his work history, and the

---

(Tr. 208). Also, although Acurio checked a box on the form indicating that Ozment's level of functioning was as severe before June 30, 2002 as it was after that date, this does not establish that the limitations were as severe as indicated in 2006 or even 2004. Indeed, Acurio acknowledged that plaintiff's condition progressively worsened. (Tr. 226).

[10] During the application process, plaintiff stated that he wanted to work, but could not find a job because no one would hire him with his back problems. (Tr. 79). Plaintiff last worked in December 2001 as a laborer, at the heavy exertional level. (Tr. 76, 106). There is no indication that plaintiff sought work at the light or sedentary level. *Id*.

medical evidence. *See*, SSR 83-20.[11]  Accordingly,

The Commissioner's decision is **AFFIRMED**, and the matter **DISMISSED** with prejudice.

THUS DONE AND SIGNED at Monroe, Louisiana, this 29th day of September, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

[11] Plaintiff does not challenge the remaining components of the Commissioner's decision.